Daniel G. Albert, J.
The court has before it two actions which were tried together at Special Term after having been consolidated for joint trial purposes only, it being agreed between the attorneys for the respective parties in both actions that the decision of this court in Action No. 1 would be decisive and controlling in Action No. 2 as well and would be determinative of all the issues involved in both actions.
The actions are by the Town of North Hempstead for a permanent injunction enjoining and restraining the defendants from *76 using their respective premises in violation of the Building Zone Ordinance of the Town of North Hempstead in the construction, maintenance and use of illegal swimming pools without having obtained the necessary permits as required by law.
In Action No. 1 the defendants, Bialek, are the record owners of premises located in Section 9, Block 611, Lot 21 on the Nassau County Land and Tax Map on the north side of Bellwood Drive, 355 feet from West Edgewood Drive, in the Village of New Hyde Park, New York, also known as 58 Bellwood Drive, New Hyde Park; the said property being located in a Residence “ G ” District.
In Action No. 2 the defendants, Horton, are the record owners of premises located in Section 9, Block 614, Lot 3 on the Nassau County Land and Tax Map on the west side of Larch Drive, 155 feet from arc north of Tulip Court, Herricks, New York, also known as 81 Larch Drive, New Hyde Park, New York; said property being located in a Residential “A” District.
Both properties are one-family dwellings, the Bialek premises consisting of a lot 60 feet by 100 feet deep and the Horton premises 80 feet by 125 feet deep.
It is conceded that the provisions of the Building Zone Ordinance of the Town of North Hempstead which would be applicable to the Bialek property in Action No. 1 are identical to those applicable to the Horton property in Action No. 2, and since it has been agreed that the decision of this court in the Bialek property will also be binding in the Horton action the court will hereafter deal only with the facts and circumstances pertaining to the Bialek property in Action No. 1.
The Building Zone Ordinance of the Town of North Hemp-stead relied upon herein by the plaintiff as the basis for its cause of action was adopted by the Town of North Hempstead in 1929 and is coneededly still in full force and effect.
The evidence elicited at the trial indicated that in August, 1963 representatives of the Building Department of plaintiff received complaints from people living in the neighborhood of defendants’ property and as a result thereof initiated an investigation which disclosed that the defendants had erected or caused to be erected an outdoor swimming pool in the rear yard of their premises located at 58 Bellwood Drive in the Village of New Hyde Park; that the structure was completely above ground; that the entire residential area of these premises consists of. a lot 60 feet wide and 100 feet deep and that the erection of the swimming pool complained of herein, together with its superstructure and surrounding walks, including a deck and benches, encompassed practically the entire rear yard of the *77 premises. Investigation further disclosed that a permit for the erection of the swimming pool structure had neither been applied for nor obtained from the Building Department of the Town of North Hempstead pursuant to its duly adopted Building Zone Ordinance.
After the Town Attorney of the Town of North Hempstead brought these facts to the attention of the defendants, the latter thereupon applied for a permit to the Board of Zoning and Appeals of the plaintiff town for a variance of article IV (§ 6.51, subds. [a] and [d]) of the Building Zone Ordinance, to permit the erection of a swimming pool which would exceed the permitted heighth and with insufficient maintenance area between the pool fencing and side walls of the pool at the defendants’ location on Bellwood Drive. A hearing was held on this application on June 24, 1964 and a decision rendered by the Board on August 19, 1964, following an inspection of the premises by representatives of the board, whereat the board denied the application on the ground that the granting thereof would in its opinion be detrimental to the public health, safety and general welfare of the immediate neighborhood.
The evidence further discloses that despite the denial of the permit to the defendants the defendants nevertheless continued to maintain and use the swimming pool as they had theretofore done and that this swimming pool structure still remains at this time and is being used by the defendants and their guests in what plaintiff claims to be a violation of the Building Zone Ordinance of the plaintiff town, and despite the fact that a formal “Notice of Violation” of the Building Department of plaintiff had duly issued to the defendants on August 6, 1965 wherein defendants were directed to remove the violation within five days or face the institution of an action against them for the enforcement of the ordinance.
The relevant sections of the Building Zone Ordinance which would be controlling in the situation here presented are section 6.51 in regard to the Bialek property (Residence “0” District), and section 4.46 of the same ordinance regarding the Horton property (Residence “A” District). As previously indicated, however, the provisions in both sections are identical.
Those portions of the Building Zone Ordinance which the court considers applicable to the issues involved herein are as follows:
Section 6.51. Swimming pools may be installed in residential districts only as accessory structures to a dwelling for the private use of the owners or occupants of such dwelling and their families and guests, or as accessory to a nursery school or day camp for children provided approval by the Nassau *78 County Department of Health is first obtained and only on the conditions provided in this article.
No swimming pool shall be installed or maintained unless: (a) Such pool is installed in the rear yard of the premises; and no portion of which shall exceed a height of eighteen (18) inches from ground level.
(b) Anything in this ordinance to the contrary notwithstanding, there shall be erected and maintained a good quality close woven stockade fence six (6) feet in height, enclosing the entire portion of the premises upon which such pool shall be installed and entirely surrounding the area in which such pool is located. No fences for pool areas may extend beyond the rear building lines or the setback lines of the subject property or the adjoining property.
(e) Every gate or other opening in the fence enclosing such pool, except an opening through the dwelling or other main building of the premises shall be kept securely closed and locked at all times when the owner or occupant of the premises is not present at such pool and shall be equipped with self-closing and self-locking devices. Such pool shall be equipped with an electrical device to sound alarm or entry to the pool area and entry to the pool.
(d) A maintenance area of at least fourteen (14) feet shall be maintained between the pool fencing and the side walls of the pool.
(e) Such pool area shall not occupy more than 40% of the open area of the rear yard after compliance with all setback restrictions.
(f) If the water for such pool is supplied from a private well, there shall be no cross-connection with the public water supply system.
(g) If the water for such pool is supplied from the public water supply system, the inlet shall be above the overflow level of the pool.
(h) Such pool shall be chemically treated in a manner sufficient to maintain the bacterial standards established by the provisions of the New York State Sanitary Code relating to public swimming pools.
No permission shall be granted for the installation of any swimming pool, unless the plans therefor meet the approval of the Town of North Hempstead Building Department construction requirements nor until the owner of the premises has filed with the Building Department a certification approved by a professional engineer licensed by the State of New York that the drainage of such pool is adequate and will not interfere with the public water supply system, with existing sanitary facilities or with the public highways.
No loudspeaker device which can be heard beyond the property lines of the premises in which any swimming pool has been installed may be operated in connection therewith which shall throw any rays beyond such property lines.
In determining any application for permission to erect a fence other than as required in Paragraph B, the Board of Zoning and Appeals shall consider whether the proposed fence will interfere with or impair the use of the light or air enjoyed by the abutting properties, the character of the abutting properties, the necessity of such a fence to protect the property to be enclosed thereby or the abutting properties, the existence, height and nature of other fences in the vicinity, and, the purposes in view referred to in Section 265 of the Town Law.
Outdoor water pools shall for the purposes of this ordinance be construed to mean any swimming pool, tank, depression or excavation in any material, dike or berm constructed, erected, excavated or maintained which will cause the retaining of water to a greater depth than eighteen (18) inches and having a larger plane surface area of water greater than one hundred (100) square feet, except such as shall hereinafter be excluded. The word pool shall be construed to mean outdoor water pool.
*79 It is the defendants’ contention that the swimming pools which form the subject matter of these actions d.o not come within the purview of the provisions of the Building Zone Ordinance above quoted because they are allegedly ‘‘ Portable Pools ” and therefore their construction is governed by section 4.46.1 of the Building Zone Ordinance of the plaintiff town, which reads as follows;
Section 4.46.1. Portable swimming pools of a size capable of retaining water to a greater depth than eighteen (18) inches and having a larger plane surface area of water greater than one hundred (100) square feet shall not be required to comply with the provisions of this section provided the following conditions are complied with in all respects:
Section 4.46.2. The pool shall be so located on the premises so as to be visible from the dwelling;
Section 4.46.3. The pool shall be located in the rear yard of the premises and as far removed from all property lines as is practicable;
Section 4.46.4. The pool shall be equipped with a cover approved by the Building Department of this Town, and shall be of such strength as to protect against accidental entry into the pool. The pool shall be covered at all times when not jn use and containing water;
Section 4.46.5. When the pool contains water and is not in use, it shall be equipped with an electrical device to sound an alarm on entry, such device to be approved by the Building Department;
Section 4.46.6. The water in the pool shall be drained whenever the residence it serves is left unattended for a period in excess of twenty-four (24) hours;
Section 4.46.7. Provision shall be made on the premises for drainage of water from the pool;
Section 4.46.8. The pool shall be treated in such manner as to maintain the bacterial standards satisfactory to the Nassau County Department of Health.
The principal issue involved in these actions upon which the court’s determination must be based is whether or not the structure in question is a “ Portable ” swimming pool.
The testimony and exhibits before the court indicate that the pool on the Bi&lek premises has an outer construction framework which consists of “ redwood with panel side walls; heavily steel-braced ” and having “a jetstream filter system” consisting of “ a heavy duty circulating system; and that the pool proper is of a ‘ ‘ heavy gauge pool liner, shaped sealed virgin vinyl, velvet texture ” and surrounded by a “ redwood deck and built-in benches. All four sides. Non-slip deck;” and that “ even the smallest pool seats fifty adults ”,
Both pools in question are of identical construction, one being the so-called “Riviera” type (Horton) and the other the “ Fiesta ” type and both are known as Future pools manufactured by the International Swimming Pool Corporation, of Roslyn Heights, New York.
The pool on the Bialelc property has a swim area measuring 16 feet by 32 feet; containing a depth of water ranging from *80 3% feet at one end to 7% feet at the other end; and its outside dimensions are 24 feet by 40 feet (Plaintiff’s Exhibit 13).
Since the information contained on plaintiff’s Exhibit 13 indicates that the benches around the smallest pool whose outside dimensions are 19 feet by 27 feet would seat 50 adults the court need hardly comment on the additional number of people that the pool on the Bialek property would seat with its dimensions substantially larger.
The testimony further indicates that these pools have remained stationary and have not been moved or dismantled from the time they were constructed in 1963 to the present time. A neighbor, one Norman Rabinowitz, called as a witness by the plaintiff, testified that the rear of his property is immediately adjacent to the rear of the defendants Bialek’s property; that there is a wooden fence between them and that he can reach across the fence from his property and physically touch the outside superstructure of the Bialek’s swimming pool; also that the swimming pool extends practically the length of the entire Bialek’s house and that the pool is used during the Summer months during the day and night and that he has personally seen as many as 20 to 30 people using the pool at one time. This testimony is uncontradicted.
A witness called by the defendants and employed by the corporation which installed these pools as construction foreman stated that he installed the pool on the premises of the defendants, Bialek, in 1963, that the pools are surrounded by pre-cut redwood pilings and planks which are held together by steel bolts; that the height of the pool area is seven feet from the ground and that it took several men three days to make the installation.
This court is of the opinion that the legislative body when it enacted section 4.46.1 of the plaintiff’s Building Zone Ordinance could not possibly have reasonably anticipated the type of structure which the court has before it in this instance in the form of a swimming pool when it provided for the exception where “ Portable ” swimming pools are concerned. The photographs in evidence, plaintiff’s Exhibits 3, 4, 5, 8, 9, 10 and 11 and plaintiff’s Exhibit 13 (Futura’s brochure) are mute but exceedingly eloquent testimony to the contrary. Every authoritative definition of the term “ portable ” which this court has been able to find, belies the contention of the defendants that the swimming pools that they constructed in their rear yards without applying for a permit so to do, and permitting them to remain and be used after their belated applications for variances were denied, are portable pools. Even the simple, *81 everyday definition of the term “portable” as found in the Second Unabridged Edition of Webster’s New International Dictionary defines this term as something “ easily or conveniently transported;” and “ not stationary, fixed, or too cumbersome to be moved ”. In addition to the foregoing plaintiff also contends that the swimming pools involved in these actions could also come under the definition as being “ structures ” within the meaning of sections 127.1 through 127.6, and that as such should not have been erected without an application to the Building Department of the plaintiff town.
The court is inclined to agree with this contention since the “ structures ” which form the subject matter of these actions in the form of the two swimming pools are of such a substantial nature in size and construction as to come clearly within the scope of the term “ structure ” as defined in the Zoning Ordinance. (See Matter of Cervini v. Shorten, 12 Misc 2d 721 [Nassau County, Chkist, J., 1956].)
The legislative body of the plaintiff town unquestionably had the right and the authority to enact such rules and regulations as would protect the health, welfare and safety of the particular areas which come within its jurisdiction. The protection of neighboring homeowners and the retention of a particular type of residence in the communities that come under the protection of the plaintiff town are also factors which zoning boards have time and again taken into consideration in the adoption of building zone ordinances. Decisional law is replete in upholding this authority as was evidenced in the following cases:
Town Zoning Board may exercise power to make zoning regulations only to promote health, safety, morals or general welfare of community. (Connell v. Town of Granby, 12 A D 2d 177,178.)
The power to impose zoning regulations is conferred upon a town for purpose of promoting health, safety, morals or general welfare of community, lessening congestion in streets, securing safety from fire, panic and other dangers, promoting health and general welfare, providing adequate light and air, preventing overcrowding of lands and avoiding undue concentration of population, conserving value of buildings and encouraging most appropriate use of land. (Capri Beach Club v. Town of Hempstead, 11 Misc 2d 1070, 1073.)
Object of Zoning Ordinance is to promote public health and safety and to preserve character of neighborhoods of uniform and limited use thereof in interest of public generally. (Bazinsky v. Kesbec, Inc., 259 App. Div. 467, 471, affd. 286 N. Y. 655, remittitur amd. 286 N. Y. 723.)
*82 A town Board of Zoning Appeals had original jurisdiction to entertain swimming and tennis club’s application for zoning variance. (Matter of Bach v. Board of Zoning and Appeals of Town of North Hempstead, 282 App. Div. 879, 880.)
Board’s refusal to permit use of property in residence district for amusement park containing swimming pool held not abuse of discretion. (Matter of Ellish v. Zoning Board of Appeals of Town of Ramapo, 141 Misc, 916.)
If the defendants’ interpretation of the provisions of the ordinance were to be adopted, and a structure such as has been erected on defendants’ premises can be termed a “portable” swimming pool, then a property owner could erect such a pool without restriction and do so even to the extent of covering the entire rear yard from end to end with such structure, and neither any neighboring property owner nor the governing authority of the municipality within which the premises are located could have any redress.
This court does not believe that such a construction was the intention of the legislative body of the plaintiff town in the adoption of the ordinance herein involved and the definitions therein contained.
Accordingly the motion of the defendants at the close of the case to dismiss the complaints is denied and the motion of plaintiff for judgment against the defendants is granted and the court directs judgment to be entered in favor of the plaintiff and against the defendants permanently restraining and enjoining the defendants from erecting, using or maintaining the swimming pools forming the subject matter of these actions and further directing that they be forthwith dismantled and removed from the premises.